CHARLES GOODRIDGE *vs.* ROBERT M. FORSMAN and others.

Cumberland.     Opinion February 23, 1887.

*Contract.     Interest.     Timber.*

The plaintiff sold to the defendants the timber on certain tracts of land, to be removed within five years from May 1, 1882, the price payable to depend upon the number of thousands of feet; on failure to cut a certain amount in the first and second years, interest to be paid on the deficiencies from May 1 following (in each year) to May 1, 1884; and all timber remaining uncut on May 1, 1884 (cut after that date) to be settled for with interest from the first of January, 1882.

*Held :* That allowing five years to remove the timber does not conflict with the interest obligations.

*Held also :* That interest upon interest, or double payment of interest, is not called for by the contract; that interest paid on the deficiencies prior to May 1, 1884, should be accounted for as prepayment of interest on cuttings after that date.

The court cannot declare such contract unconscionable, there being no

suggestion of fraud practiced upon the defendants, who are men of mature years and of business intelligence, even if an intricate and hard contract.

ON report.

The case is stated in the opinion.

(Copy of contract declared on.)

"This agreement made this twenty-first day of January, A. D. eighteen hundred and eighty-two, by and between Charles Goodridge of Deering, in the State of Maine, of the first part; Robert M. Forsman of Williamsport in the State of Pennsylvania, William T. Price of Black River Falls, in the State of Wisconsin, and George F. Foster of Portland, in the State of Maine, of the second part: witnesseth — that it is mutually agreed as follows, to wit: the said party of the first part hereby agrees to sell to said parties of the second part all timber standing, lying, or growing on the following described parcels of land situated in Eau Claire county, in the State of Wisconsin, to wit: . . . for the agreed price of two dollars and twenty-five cents for each one thousand feet of merchantable pine timber on said lands that will measure twelve inches at the top, and at least twelve feet long, to be paid by said parties of the second part to said party of the first part as follows: Four thousand dollars on the execution of this agreement and the balance as hereinafter specified; said four thousand dollars is to be held by said party of the first part as security for the performance of this agreement, and on the completion of the same by the said parties of the second part, is to be allowed with interest from the second day of January, A. D. eighteen hundred and eighty-two, on the last payment to be made by them under this agreement. It being understood that all merchantable pine timber of the dimensions aforesaid, including all timber twelve inches in diameter in every tree which is large enough to make one log of the dimensions aforesaid cut on said land, shall be paid for by said parties of the second part to said party of the first part, at the rate aforesaid, interest being allowed as hereinafter specified.

"Said sale is made subject, however, to the following conditions.

and agreements, to wit: said timber shall be cut and removed from said lands by said parties of the second part within five years from the first day of May, A. D. eighteen hundred and eighty-two, and shall be cut clean from said lands as fast as the work progresses. All timber which is sound and large enough to be cut into logs twelve inches at the top and twelve feet long, including unsound logs, the sound portions of which will give the measurements aforesaid, shall be cut and accounted for to said party of the first part at the rate aforesaid. The logs as measured are to average sixteen feet in length: logs twenty-four feet long are to be measured twice, to wit, as two logs, and if longer there shall be a measurement for every twelve feet additional. All timber cut on the above lands is to be hauled by said parties of the second part to the Eau Claire River or its tributaries and to be scaled on the bank. It shall be kept separate from all other timber until it has been so scaled and the scale has been accepted by the party of the first part. All logs are to be scaled sound, and such a record of the scale shall be kept as is usual according to the standard form of scale books that are in use on the Chippewa River; such scale shall be made by some competent scaler who shall be mutually agreed upon by the parties to this contract, and shall be paid for his services by the said parties of the second part. Provided however, that if at any time either of the parties to this agreement shall be dissatisfied with the scale so made he may cause said logs or any portion thereof to be scaled by the district scaler of the district in which said timber is situated, the expense of said rescaling to be borne by the party causing the same to be made, unless the first scale is found to be incorrect, in which case the expense is to be borne by both parties jointly. All logs are to be marked by said parties of the second part in a plain and substantial manner with such a mark as shall be registered for the season, which said mark shall be recorded in the name of the party of the first part in the office of the Surveyor General of logs and lumber in the district where the timber is situated. Said parties of the second part are to cut and haul not less than three millions three hundred and thirty-three thousand feet of timber, to be

accounted for to said party of the first part, from said lands during each of the two winters of eighteen hundred and eighty-one and eighteen hundred and eighty-two, and eighteen hundred and eighty-two and eighteen hundred and eighty-three, respectively. And in case of failure to cut and haul the above amount are to allow and pay to said party of the first part interest on the amount of the deficiency in each year from the first day of May following to the first day of May A. D. eighteen hundred and eighty-four; and all timber on said lands remaining uncut after said first day of May eighteen hundred and eighty-four shall be settled for at the rate aforesaid with interest from the first day of January A. D. eighteen hundred and eighty-two. All timber cut on said lands in any year as hereinbefore provided shall be paid for on or before the first day of November following with interest from the first day of May preceding, on which day the account of the timber cut in that year shall be made and adjusted. All timber destroyed or injured by fire or wind subsequent to the date of this agreement shall be accounted for by said parties of the second part as ·if cut and hauled by them, it being understood that all the timber on said lands stands at the risk of the parties of the second part after the date of this agreement. It is further understood and agreed that this agreement shall not be transferred by said parties of the second part, nor shall any sale. of the timber cut on said lands give to any other party the right to cut and haul the same without the written consent of the party of the first part.

"The said party of the first part is to pay all taxes on each forty acres of the foregoing lands until they shall be cleared of timber as aforesaid, after which time all taxes on the same shall be paid by said parties of the second part and the lands shall thereupon be conveyed by quit-claim deed to said parties of the second part. It is further agreed that the interest specified in this agreement shall be at the rate of six per cent. And the said parties of the second part in consideration of the premises hereby agree to purchase of said party of the first part said timber to be cut as aforesaid, and to pay said party of the first part for the same. at the rate and in the manner hereinbefore

provided, and to do all other things on their part necessary to be performed in order to carry out in good faith the foregoing agreement in all its specifications and details."   Duly executed.

*Symonds and Libby* for the plaintiff.

*A. A. Strout and H. C. McCormick* for defendants, Robert M. Forsman and William T. Price.

*C. W. Goddard* for defendant, George F. Foster.

PETERS, C. J.   The plaintiff made an agreement with the defendants, which was, in effect, to sell them certain parcels of timber land in Wisconsin, the total price to depend upon the quantities of timber on the tracts ; the price per thousand feet to be $2.25 ; the land, when stripped of timber, to be deeded to the defendants.

The defendants were by the agreement dated January 21, 1882, but consummated by delivery in May, 1882, to have five years from May 1, 1882, within which the timber should be wholly taken from the territory. The contract imposes certain obligations on the defendants, such as are expressed in the following clauses :

" The parties of the second part (defendants) shall cut and haul not less than three millions three hundred and thirty-three thousand feet of timber, to be accounted for to said party of the first part, from said lands during each of the two winters of eighteen hundred and eighty-one and eighteen hundred and eighty-two, and eighteen hundred and eighty-two and eighteen hundred and eighty-three, respectively. And in case of failure to cut and haul the above amount are to allow and pay to said party of the first part interest on the amount of the deficiency in each year from the first day of May following to the first day of May A. D. eighteen hundred and eighty-four ; and all timber on said lands remaining uncut after said first day of May eighteen hundred and eighty-four shall be settled for at the rate aforesaid with interest from the first day of January A. D. eighteen hundred and eighty-two. All timber cut on said lands in any year as hereinbefore provided shall be paid for on or

before the first day of November following with interest from the first day of May preceding, on which day the account of the timber cut in that year shall be made and adjusted."

The defendants deny any liability under the clause which stipulates for interest from January 1, 1882, upon the price of the timber that might remain uncut on May 1, 1884, contending that the clause is null and void. After a careful examination and consideration of the question in all its aspects, we find ourselves unable to concur in that view. The clause is too prominent a part of the contract to be easily overlooked.

It is urged that the controverted clause is inconsistent with the dominant provision in the contract, which gives five years for the removal of the timber. We do not see that it is. The entire contract may be performed by the defendants any time within the five years, but if an early performance is accomplished, it will be much more beneficial to them. They lose very much by prolonging the period of executing their obligations. The difference in result was intended to stimulate them to act promptly. The theory of the defense would allow all the cuttings, after the first two years, to be made in the fifth year of the contract, with no interest accruing to the plaintiff before that time. It seems to have been the intention of the parties that the timber should be removed within three years at the most, or that the plaintiff should be compensated for the delay.

It is also contended that the clause under examination is inconsistent with another clause which provides for annual settlements in May, or as of May, and annual payments in November afterwards, the plaintiff to receive interest accruing between those dates. It is said that this implies a payment of interest from May 1 of each year instead of from January 1, 1882. At first look, this might seem an inconsistency, but we think the intention is discernible. For any operations after the third year, settlements are to be made on May 1, payments made on November 1, and interest to be reckoned on the sums due, from May to November, and also from January 1, 1882 to May 1, in each year. For instance, for an operation in 1885-6, a settlement on May 1, 1886, ascertains the amount due — that

amount is payable on November 1, 1886, adding interest on such amount from May 1, 1886, and also adding interest on the same amount from January 1, 1882 to May 1, 1886 — or, in other words plaintiff would be entitled, on November 1, 1886, to the sum due as principal with interest from January 1, 1882. Interest is not to be cast upon interest. If the sum due as principal on November 1, 1886, were $10,000, the sum then payable would be $10,000, plus $300 (interest from May to November) plus $2,600, (interest from January 1, 1882 to May 1, 1886) that is, $10,000, plus $2,900, (interest from January 1, 1882 to November 1, 1886) that is, $12,900.

It is also contended that the clause is irrational and illegal because it calls for a double payment of the same interest. This objection refers to a supposed requirement to pay interest on the value of certain quantities of timber not cut in 1881-2 and 1882-3, the deficiencies for those years, and to pay interest on the same quantities of timber when actually cut after May 1, 1884. That is not our view of the rights of the parties. We think that neither interest upon interest nor a payment of double interest is called for. The words of the contract are, that the timber remaining uncut after May 1, 1884, shall be settled for, " with interest from January 1, 1882." That is not a declaration that any part of such interest shall be twice paid. The plaintiff is to have interest from January 1, 1882, including and not excluding what has been paid before. He gets interest in such settlements from January 1, 1882, by having a portion at the dates of the settlements and a portion before. If the plaintiff has already received a portion of the interest, and gets the balance when a settlement ensues, he will literally have "a settlement with interest from January 1, 1882." He must credit the prepaid interest. The result will be that the plaintiff will recover no interest on cuttings after May 1, 1884, unless an excess of interest has accrued over the amount paid on the deficiencies of cuttings for the first two years.

Finally, the defendants contend that, if literally construed, the clause in question imposes unconscionable burdens upon them,

and for that reason it should be adjudged void. That it is an unusual and a severe contract there can be no doubt. There is nothing, however, informing us that the defendants did not enter into the contract freely and intelligently. If there be cause for reforming the contract for any mistake of the parties, the appeal must be in equity. We cannot but think that the agreement is in some respects not fortunately worded. Its full meaning, does not, perhaps, lie openly enough on its face. It is complicated.

But we cannot declare the contract unconscionable. To be sure, under certain conditions, it exacts the payment of an extraordinary sum of constructive interest,—or interest in the nature of penalty or damages. The defendants would have exempted themselves from this burden by clearing the land of its growth in the first three years. They did not agree to do so, but they, impliedly at least, agreed upon a greater consideration to be paid to the plaintiff should they fail to do so. It may be, for aught we know, that the price for the timber was placed at a lower rate than it otherwise would have been, on account of the stringency of the demands of the contract in the matter of time. We think none of the points tenable, which we find on the briefs of counsel, in opposition to the view of the contract which impresses us as the correct one, and we leave them without further discussion.

The figures give the following result : There were no operations on the lands during the first and second years,—but the sums of $899.90 and $449.95, making together $1,349.85, were advanced as interest on the so-called deficiencies of those years. There was a small operation in the third year, which has been settled for. During the fourth year (1884–5), the cuttings, including broken timber, were 4,030,550 feet, coming at contract price to $9,068.73. Interest on that sum from January 1, 1882, until 29 October, 1885, when a payment was made, is the sum of 2,084.29. Deducting from that amount of interest the prepaid interest, $1,349.85, leaves $734.44, which balance added to the principal, $9,068.73, makes $9,803.17. From which

deducting the payment made on October 29, 1885, of $6,784.43, leaves a balance due, on that date, of $3,018.74.

> *Defendants defaulted for $3,018.74, with interest thereon from October 29, 1885, to the date of judgment.*

WALTON, VIRGIN, LIBBY, EMERY and HASKELL, JJ., concurred.